May it please the Court. I certainly hope it does. My name is David Blau. I'm here as the appellant for American Safety Indemnity Company. The underlying case is a declaratory relief insurance coverage action. The underlying MSJ that regards this appeal is a single case. The underlying plaintiff is my client Hugh Gilotti. There are several facets to the appeal. The first of which I'll characterize as the fact that the suit is improper because there's a lack of damage. And it calls for an advisory opinion. There are two other carriers that are and have been from the outset defending Gilotti in the underlying case. There's no evidence in the record that Gilotti has incurred one penny of damage. And there's cases cited in the briefs that I won't reiterate unless I'm asked questions about them. One's Fireman's Fund v. Maryland Casualty, a 1998 case, that says, uses the word ceases, the insurer's right ceases. And in fact, this is the whole reason for contribution law in California and other states where giving one insurance company who's defending the right, if they feel like they're paying more than their fair share on a particular loss or case, to sue other carriers. And the purpose for that and the public policy behind that is very clearly described in a handful of cases. And it's to take the onus and the obligation away from the insured. Once the insured has a carrier defending it, it is that carrier's complete ‑‑ excuse me, obligation to provide an immediate, complete and full defense. And those rights are very clear. If that insured doesn't do it, it's a slam dunk for the insured on defense. They must. It is the carriers who have agreed to defend's obligation to get back ‑‑ believe that the other carrier's coverage would cover all of the potential claims. I'm not aware of whether, if you're speaking to indemnity, these other carriers would ultimately indemnify. Because if there was some portion of the potential claims that the other carriers wouldn't cover, then Jilati had the right to come against your client and sue them for a failure to cover, right? For failure to defend. Well, there's two different things. One is the failure to indemnify, which is an ‑‑ I'm talking about the failure to defend right now. Right. Failure to defend. The point is that these other carriers are defending ‑‑ Right. But let me refine the question with Judge Veigas' permission. Let's assume that one of the carriers says, we're going to withdraw the defense now that one of the claims has been resolved. And that was the only claim that we covered. Why do you think you're not on the hook for defending at that point? Well, that's not the situation. I'm not. This is hypothetical. So the hypothetical is there's one carrier defending. No. You have two carriers that insure different risks. Okay. But the suit encompasses both risks. First insurer says, we're defending and providing a defense subject to certain reservation of rights. And then, during the middle of the case, the carrier says, I'm withdrawing, so we're withdrawing the defense. Doesn't the carrier number two have the obligation, the duty to defend at that point? Depending on the terms of the policy, if the facts are such that that other carrier would have a duty to defend anyway ‑‑ Right. I'm just saying both carriers have a duty to defend, but they defend different claims that are being asserted. Right. But the duty to defend, and this is an important part of contribution law, is it's complete. So if you have a duty ‑‑ Right. But if ‑‑ I don't know if you're saying this. I think I know where you're going, but I just want to make sure I understand it. You only have the duty to defend the claims that are covered. Once those claims that are covered have been resolved, there's no further duty to defend that lawsuit. Right? Well, yes and no. And let me explain. The duty to defend encompasses all claims. Well, I understand that. Okay. So, right. And I just want to answer your hypothetical. I'm just saying your duty to defend involves all claims. Maybe I'm not presenting it well. The duty to defend is triggered for both insurers under that circumstance. There are different risks, but the complaint touches both. So carrier one defends, but then all the claims that could possibly arise coverage get dismissed on summary judgment withdrawn by the plaintiff. You would agree at that point that insurer one doesn't have a duty to defend anymore? Under that hypothetical, yes. All right. And at that point, insurer two has a duty to defend the rest of the suit because the claims that it insures are still in the suit, and its duty to defend is triggered. Hypothetically, yes. All right. So now we're getting back to Judge Bivey's question. What about this case? Are there risks? Are they defending everything? Is there a possibility that they're not going to be defended in the future, or do you know? Because your duty would be triggered if there are, if the other insurers withdraw. If the other insurers would withdraw, or had they not already admitted first out of the gate that they had a defense, then for other reasons, I don't believe my client in this case would have a defense. For, hypothetically, then yes. If there are no other carriers defending at any time, then yes. Let me get to the punchline. Okay. Why doesn't that fact give the insured the standing to sue? Because it's advisory, because there's no damage. And I would refer the case to the case. But there's potential damage. Potential damage under you have to have an actual controversy. At the time that the lawsuit was filed, is it clear that they, that the matter had already been litigated such that you could already anticipate there were no further damages? In other words, was the defense by the other two insurance companies complete at the time that Gelati filed the suit against your client? At the time Gelati filed the suit against our client, we Was the litigation still ongoing? The underlying litigation was ongoing, yes. Okay. So at that point, you might not have known whether one of these insurance, one of the other insurance companies defending Gelati would withdraw and say we're done, we've finished our obligation. I don't know how we could know what In that case, then, wouldn't Gelati have standing to sue you? Not according to California law, no. Because the purpose is that once there's a carrier defending, that carrier hasn't fallen complete from the beginning to the end. And these factual, this factual situation doesn't, wouldn't support that sort of withdrawal. I have a couple of other questions about the implication of your argument. So your argument is that we lack Article III standing. I'm sorry, that Gelati lacks Article III standing and therefore this Court is deprived of jurisdiction because the proper party to bring this suit would be the other insurance companies and not Gelati Brothers. Is that correct? Under these facts, that's one facet of it. Okay. You removed this case to Federal court. Is that correct? Yes. Right. Now, how can you be in the position of removing the case to Federal court and then come in and tell us that we lack jurisdiction over the case that you removed? Well, I don't think that it's purely a jurisdictional argument. I think the proper venue for the court is Federal court because of the diversity of the parties and the amount that was at issue. I think the argument that we're making is based on California substantive law that an insured But the argument you made in your briefs was that you lacked, was that they lacked standing. Okay. I think it can be equally characterized as fails to state what I said at the beginning of this argument is it's an improper lawsuit under the Fireman's Fund in Maryland casualty case, for example, as noted in Ringler, for example, that an insured can't be held to complain under these circumstances. So maybe it's not purely a jurisdictional argument, but it is following those cases. So if we adopt your argument, how can an insurer ever file a deck action against an insured? If they have damage. No, no. I'm saying you've decided not to defend, but you want to file a deck action. You say, well, you're not damaged. We aren't out a penny. Insured is purposefully not the obligation. The onus is taken away from the insured. It's the other carrier's obligations to do that. You're not answering. You're not understanding my question. I'm not talking about this case. I mean, if we accept your standing argument, in other words, there's no actual damage, therefore the insured doesn't have the right to sue for a declaratory judgment or damage, standing only. I'm not talking about recovery. Then why isn't the reciprocal true, that insurance companies have no standing to sue an insured for a declaratory judgment action to determine the contract? If the insured's not, if the carrier's not being pursued, I guess maybe I don't understand the question. My point being, and let me try to answer it by way of an example, and the example is a case cited by Gelati. It's Haskell. In that situation, the insured sued one of the carriers because there was a difference of opinion of what percentage on the defense the insured had to pay. The insured can sue if one of the carriers doesn't, you know, pulls the defense, or the insured can sue if the insured is out of pocket a certain amount of money. I think a normal case Why can't the insured sue to determine what rights it has under the policy? I believe, and the cases support, that it's because there's no damage to support it. There's no actual damage. I mean, if we accept that, if we accept that, then insurers don't have the right to file a declaratory judgment action to determine what the insured's rights are under the policy either. And that doesn't make any sense to me. In other words, you're in the same position. Let's say you're not defending. There's not a penny going out. But you want to file a deck action to make sure that you don't get a bad faith case later. Right? That's common. Under your theory, there's no damage. Therefore, the insurance company has no right to pursue it. In California, a prophylactic deck action, unlike other states, is not required. And also, in this case, we're just talking about I'm not talking about whether it's required. I'm just saying whether you have standing or not. And in this situation, we're talking about only defense. We're not talking about actual cover. We're talking about only defense. I understand. But the fact that you may not have any actual damage doesn't prevent anyone from seeking a declaration of rights and obligations under a policy in a deck action. We believe that the law of contribution under Ringler and Fireman's Fund and the reasoning of those courts is sound, which says that the insured's right to pursue another carrier for defense when other carriers are defended ceases when those other carriers have a defense. Counsel, if Judge Gould, if I could ask you a question. Absolutely, Your Honor. Which I may or may not clarify the dialogue going on. But just a practical question. Did Jiladi have their own counsel representing them so that the insurance companies were just paying the bill for their lawyer? Or were the insurance companies providing lawyers to argue in court? You know, if the record shows that. There's nothing in the record that shows that Jiladi paid anything out of pocket. I don't recall whether the insurance companies that are defending and were agreed to some counsel that Jiladi asked them to agree to or retain someone independent from their panel. But from the outset of the underlying case, I believe the record's clear that Jiladi provided a defense from the underlying case. I'm concerned about my time. I would like to touch on some other points, but I also obviously it's more important to answer your question. No, go ahead. You've answered my question. You have about two minutes left. Okay, I'm going to try to go as quickly as possible. I'd like to, well, I guess I, okay. That's the situation. When it comes to the more substantive coverage issues, we have prong one that there's no occurrence in this case. And because I'm short on time, I would again refer this Court to a couple cases, one, well, actually one, which is the Enfire Insurance case, where the Court analyzed this case was decided about ten days before the hearing and the ruling on the underlying motion for summary judgment. And the Court held, and in fact, this is cited in Jiladi in its brief in this appeal as well, that the accident in an insurance policy refers to the nature of the act giving rise to liability and not to the insurer's intent to cause harm. In this case, they knew they were working on the site. It was their job. They mobilized. Jiladi went up there, was clearing some roads for some, clearing some trees for some roads and doing their preliminary work, and they cut down a bunch of trees. They cut down those trees intentionally. Fire insurance also clarifies and explains that the focus is on the act, and a mistake of law, whether they thought it was permitted or not, is not relevant to the intentional nature of the conduct. So the first prong is there's no occurrence, there's no requisite accident. They, in fact, say and they argue that damage arising from the tree removal is the property damage. So there's an intentional act. There's no accident. There's no occurrence. That's one of the prongs. The second prong, and I'm going as quickly as I can, is J-5 and J-6, where they argue where it squarely applies to these facts. They were on site doing their work that they intended to do. They're grading. They're cutting. When the alleged property damage took place, they, the record is complete. The fact that they say that J-5 and J-6 are somehow ambiguous is not, it's not, you can't find an ambiguity in the abstract. And on these facts, there's nothing ambiguous about it. They were up there doing their thing, and that's where the alleged property damage happened, on the property where they were doing their work. To say, for example, that work is not work for the purposes of an insurance policy because it's not under a contract or work is only work if it was done after the contract was signed is an absurdity. Your time has expired. Okay. In fact, you're about a minute over. Thank you. Good morning, Your Honors. Samuel Barnum, counsel for Appellee Gelati Brothers. Good morning, Judge Gould. Before I get to my substantive remarks, I just want to tend to a housekeeping matter, which I think is especially important in light of what I've just heard from the appellant's counsel. There was a reference to the record that was omitted in my brief, and I just want to alert the Court to that. And I'm referring to page 46 of my brief where I talked about the coverage position of both Evanston and CNA, the two carriers who were providing the defense and are providing the defense still now. And the two documents that are in the record and were argued were in the record, they were submitted in the proceedings below in the motion for summary judgment. One is the reservation of rights letter from Evanston. You'll find that in volume four of the excerpt of records, pages 934 to 947. The second document is the reservation of rights letter from CNA. That also is in volume four, pages 913 to 933. I want to come back to those two documents because I think they certainly bear on the discussion we just heard on standing presented by counsel for the appellant. What's the status of the litigation now, the underlying litigation? The underlying case, the consolidated case, proceeded to trial last year. There was a defense verdict on the cross complaints against my client. The jury awarded damages to my client on his affirmative claim, his complaint. The case is now on appeal. Okay, that's what I wanted to know, the status of that. So when you say you're still, insurers are still defending you, you're talking about taking the appeal. That's correct, Your Honor. They are defending on the appeal. So why do you think you get double recovery on defense costs? There is no double recovery, Your Honor. So the breach of the duty to defend means what in this context? In this context, there was a dispute about American Safety's obligations to my client. We're not talking about a contribution claim with the other carriers. So what out-of-pocket, what costs out-of-pocket are you, is your client suffering? What litigation costs is your client incurred? Well, there are two aspects of that. One thing that they've incurred is a self-insured retention under the American Safety Policy, the $25,000, they're out-of-pocket that. But referring to the reservation of rights letters, both CNA and Evanston have reserved their right to obtain reimbursement from my client for defense costs that they have paid in defending Gelati in the case. That's one of the reservations taken in their reservation of rights letter. So my client stands to be potentially exposed to a claim in the future. But at this point, you have no actual damages. I'm not exactly sure that that's true, Your Honor. Well, if you're not exactly sure that it's true, are you exactly sure that it's not true? No, I'm not exactly sure that it's not true. The reason I'm – this was a declaratory relief action. There was a sole cause of action for declaratory relief. There's no cause of action for breach of contract for damages in this lawsuit. We're not foreclosed from proceeding with that. We're entitled to proceed with a declaratory relief action. We don't have to tag on a breach of contract cause of action. I mean, the reservation of rights is interesting because it suggests that you may well have standing and overcomes ASIC's standing objections. But it almost – it also looks like you don't have any actual damages at this point. A declaratory relief action addresses an adjudication of the rights and liabilities between the parties to the lawsuit. In this case, it involves the insurance contract between my client and American Safety. And what is the injury – I'm sorry, Your Honor. Injury in fact. What is the injury in fact to your client at this stage from the insurance company not defending? Well, they have incurred – Don't we have to look at whether there's an injury in fact under Lujan to have standing? You're referring to the constitutional requirement under Article III. Right. So what is the injury in fact that's claimed? My client has incurred attorney's fees, which they have had to pay to me as their personal counsel to get American Safety to perform its obligations under the contract. That's a bit of a bootstrap, isn't it? I don't follow, Your Honor. Well, I won't put words in Judge Gould's mouth, but the question that I have that I think is exactly – I thought was what Judge Gould was asking was, what costs have your client had to pay for its defense in the suit against the principal contractor? There are some unreimbursed costs that have not been paid by CNA and Evanston. Like what? Attorney's fees that were paid to the law firm who represented my client prior to the retention of the Sedgwick Law Firm, which was retained jointly by CNA and Evanston. Well, let's – do you mind backing up a bit? I mean, I think I want to make sure we're proceeding on common ground, if we're not then. I mean, you would agree that in a situation where you have multiple insurers, that the insured is only entitled to one defense. That's correct. In other words, you're not entitled to three lawyers. You're entitled to one lawyer. And then among the insurers, that's a matter of contribution. True? Well, ultimately, the contribution rights can be adjudicated and decided after the underlying case is resolved. Sure. I think that's how it's done. Right. But, I mean, you don't have – you can't – let's assume that CNA were – if it's paying for the whole thing, you don't have a right to then come back later and sue somebody else for recovery of CNA's defense costs. No, we – no. Absolutely not. And we're making – we're not making any claim along those lines. And you agree generally with the doctrine of selective tender, that the insurer gets to pick who – which insurer is going to defend the case? I do. And in this case, they tend to draw four carriers. Right. So what are you seeking in this? You just want a declaration as to the gap coverage if you're not fully indemnified? What we are seeking is the participation of American safety. The whole notion of this – Are you talking about perhaps in settlement? I guess I'm trying to get from the practical point of view what you're after here. Well, you're asking a question that I was going to address here. Okay. In the reservation of rights letters by CNA and Evanston, they said, we will cover – we will defend you subject to a number of reservations, one of them being that we cover you only for property damage that occurs during our policy period. Mm-hmm. Evanston was a carrier before American safety. CNA was two policy periods down the road. As it turns out, the biggest liability exposure for my client in the underlying case had to do with property damage that occurred during American safety's policy period. That's where the liability exposure was. And Evanston was not going to pay that. CNA was not going to pay that. If I might just interrupt. So you're really not concerned about the duty to defend it, per se, because you had a defense. What you are concerned about is the ultimate duty to indemnify the judgment. Is that fair? That's one of the concerns. I don't understand your concern about a duty to defend. Since you were defended at trial, you are being represented on appeal. What am I missing? It has been our position since we tendered this to American safety and throughout the underlying case that American safety has a duty to defend. The court held that they do have a duty to defend. That means there has to be something that has to be done, even when there is another carrier participating. Well, it's not a duty to defend in the air. And what we were calling on American safety to do was to participate with the other carriers in defending us. And it's not just paying the bills, but it's also participating in preparing the defense, attending settlement conferences, attending mediations, being actively involved. What they want to do is sit back, and they're not the only carrier, but in this case they're the carrier that has sat back and allowed two other carriers to mount the defense. But why doesn't that cause of action belong to the other carriers? Because they're the ones that are out of pocket on the money. They're the ones that have funded the defense. Why isn't it their cause of action rather than yours? Because they're two different causes of action. See, I don't understand the theory that another insurer gets to participate in defense. I mean, I assume that the CNA policy says we have a right to control the defense, right? Yes. And probably the other – what's the other carrier's name? Evanston. Evanston has the same right to control defense. So aren't you interfering with the carrier's right to control the defense when you say, no, this carrier has a right. We want this other carrier to come in and help control the defense. In other words, you tendered it to everybody. You made the selective tender. CNA and Evanston accepted it, and they said we're going to participate. I just am not following how there's a right for an insurer to participate in decisions that flows to your client. Well, the other two carriers have asked that American Safety join in the defense. They had tendered it as well. I'm just saying, why isn't that their cause of action, not yours? There are two distinct rights that are at play here. One are the contribution rights of the carriers as between themselves. And they have not assigned those to you. American Safety had the contract with Gilotti. We asked them to defend. And in this case, it meant joining in with other carriers to whom we defended who recognized that they had a duty to defend the underlying case. We wanted a full defense because the damage exposure fell, the only real potential damage exposure fell within the American Safety policy. We needed them to be actively involved from the outset of the case. It was our interest to protect our rights, our interests, as insured under the American Safety policy. So you're concerned, then, that the defense that has been offered by CNA and Evanston has not been vigorous because you think that there are, that your greatest liability is on aspects of the case that don't, that won't come under their, under their policies? No. We have no complaint about the quality of the defense provided by Evanston and CNA. And, in fact, ethically, the attorney whom the carriers hire has responsibility to you and not to them. It would be a conflict of interest if that attorney said, I'm not going to defend that part because my carrier has a reservation of rights. True? Right. Well, the carriers are obligated to defend the entirety of the case. Let me, let me look at that. Counsel, if I could just ask you, the question I asked your colleague on the other side, does the record show if Gelati hired its own lawyer and the insurance companies are just paying the tab, or if they selected the lawyer, do then it would work for Gelati? Your Honor, the short answer is I don't think that is clearly stated in the record. I can tell you and make a representation based on my own knowledge. I don't really, I don't want to know anything not in the record, actually. Although it should, the record would reflect that they're two different counsel. That's correct, Your Honor. In the tender letters, there are tender letters from counsel who were representing my client prior to the retention of the law firm by CNA and Evanston, Sedgwick. And the reimbursement costs have not, for that time, have not been resolved by the carriers? Some of them have been paid. But not all, you said. Not all. Okay. Let me refer the Court to the other questions. I know you've got to. Counsel, you don't have a lot of time. I would like you to address the total prior work exclusion before I sit down. Thank you. There's one other point. Let me answer your question first. We have argued, there are two arguments on this. They're covered in the brief. I'm not going to go into them in great detail. I believe that there is an ambiguous provision outside of the Pennsylvania general case about that. I don't want to dwell on that. But what I do want to also alert you to is that our position as well is that even if that provision is not ambiguous, that under the facts of this case, at least as alleged in the cross complaints, the contract was formed during American Safety's policy period, the work was done during American Safety's policy period, the occurrence was in American Safety's policy period. In the cross complaint from Monaghan, they clearly allege that the damage to the trees took place in early, either late August or early September. September 2nd, 2003. Your contract with ASIC doesn't come into effect until October 1st. That's correct. Okay. So, I mean, that seems to be a perfectly sensible reason for ASIC to say, you caused this damage during a time when we didn't have a contract. Well, that's absolutely right if that were the only information they had. It's not. There are other allegations in the cross complaints. There's extrinsic evidence that they were given and they had in their possession before they denied coverage and refused to defend. Specifically, in contrast to that allegation of September 2003, in the complaint against Heim, the grading subcontractor who was Gelati's subcontractor, who actually did the grading and removed the trees, in the complaint against him, which was ultimately consolidated in this case, the cross complainants, Monaghan, make the same allegation about tree removal, but they say it happened in May of 2004. So you have inconsistent allegations being made by the cross complaints. On the one hand, they're saying it's September 2003. On the other hand, they're saying it's May of 2004. In the complaint that you would have tendered to ASIC, though, the allegation was that it was in early September 2003. But we also gave them and they also had the Heim complaint, which alleges that that tree damage that is said to be in September 2003 in one cross complaint is now said to be in the later complaint filed, May of 2004. In addition to that, I refer you to a document in the record, Volume 4, Excerpt of Record 897-912. I will call this the Evanston letter. It's a letter from Evanston's Coverage Council, which was sent to American Safety. The letters dated April 15, 2008. It was sent by e-mail that day to the recipients. It's in their claim file. They never denied they got it. What's important about this letter, because it goes directly to, Judge Bybee, your question to me, that letter was a summary of certain evidence. More specifically, it was a summary of job tickets for the time that Gelati performed its work with respect to the tree removal. It also was a summary of certain deposition testimony that had been taken in the case to that point. If you'll bear with me just one moment. One of the witnesses who testified was a Mr. Galen Hader, and you'll see that part of the letter is on page 899. He was a project manager for Monaghan for that project. And if you look on the next page, 900, he says, and he's the project manager, he says he was not aware of any tree removal associated with the red tag. Now, the red tag is something that happened back in September 2003. But this is information from Monaghan's own project manager for that specific project. And according to him, that tree removal didn't happen in 2003. If you look at a few pages later on this summary, you come to a summary of Mr. Heim's testimony. And he talks about what he did. Counsel, you are over time, but where are you in the record just so we can take a look at it? Okay. This is ER1. Thank you, Your Honor. This is the letter from Evanston's counsel. It's volume 4, and it starts on page 897. It goes on for several pages. Any further questions from the panel? There is one thing. One last point, Your Honor, because an argument was made here this morning on the occurrence issue. The occurrence issue was not briefed on the opening brief. We take your point. Yeah. All right. I realize that there's a lot more that you'd like to say, and time is slipping away from us for the other case in the calendar. But we have read the briefs. If you don't feel that you've adequately covered them, you can file a 20HA notice with the clerk and call our attention to those things that you don't think you've covered adequately in your argument or your briefs. But even though we haven't talked about them today, we have read everything and are taking it seriously. So thank you both for your arguments. Thank you, Your Honor. And we will be in recess for 15 minutes. All rise.
judges: Thomas, Gould, Bybee